**MISSOURI PACIFIC RAILROAD COMPANY, Petitioner,**

v.

**ELMORE & STAHL, Respondent.**

No. A–9323.

Supreme Court of Texas.

May 15, 1963.

Rehearing Denied June 12, 1963.

Sharpe & Hardy, Brownsville, for petitioner.

North, Blackmon & White, Corpus Christi, for respondent.

WALKER, Justice.

On the only question presented by this appeal, we hold that after a shipper of inanimate perishables by common carrier railroad in interstate commerce has made a prima facie case of carrier liability, the carrier may not exonerate itself by showing that all transportation services were performed without negligence but must go further and establish that the loss or damage was caused by one of the four excepted perils recognized at common law.

Elmore & Stahl, respondent, brought this suit against Missouri Pacific Railroad Company, petitioner, to recover for alleged damage to three shipments of honeydew melons and one shipment of green peppers. The petition contains four separate counts, each relating to one of the shipments. Trial was to a jury and resulted in judgment on the verdict in respondent's favor on all four counts. The Court of Civil Appeals affirmed the judgment of the trial court as to Count I, but reversed such judgment and remanded the cause as to Counts II, III, and IV. 360 S.W.2d 839.

We are concerned here only with Count I. Respondent sought thereby to recover for damage to 640 crates of honeydew melons shipped in Car ART 35042 from Rio Grande City, Texas, to Chicago, Illinois. In response to the first three special issues, the jury found: (1) that at the time the bill of lading was signed the melons were in such condition that, based upon the orders given by the shipper to the carrier and the reasonable performance of such orders by the latter, they would have been reasonably expected to arrive at destination in good merchantable condition; (2) that upon arrival at destination the melons were in a worse condition than would reasonably have been anticipated on the basis of their condition at the time the bill of lading was signed, the orders given by the shipper to the carrier, and the reasonable performance of such orders by the carrier; and (3) that petitioner and its connecting carriers performed without negligence the transportation services as provided by the terms and conditions of the bill of lading and as instructed by the plaintiff, and in a reasonably prudent manner as to matters not covered by such bill of lading or instructions. The jury refused to find· that the condition

of the melons upon arrival in Chicago was due solely to inherent vice or to the carrying out of respondent's instructions for handling the shipment. "Inherent vice" as defined in the charge included "the inherent nature of the commodity which will cause it to deteriorate with a lapse of time."

■ Under the general common law rule, a shipper of goods by common carrier makes a prima facie case of carrier liability by showing that the shipment was in good condition when delivered to the carrier at place of origin and in damaged condition when delivered by the carrier at destination. The carrier may then escape responsibility for the damage only by showing that it was caused solely by one or more of four excepted perils: (1) an act of God; (2) the public enemy; (3) the fault of the shipper, or (4) the inherent nature of the goods themselves. Where the loss is not due to one of these specified causes, it is immaterial whether the carrier has exercised due care or was negligent. See Commodity Credit Corporation v. Norton, 3rd Cir., 167 F.2d 161; 13 C.J.S. Carriers § 71, p. 131. Some courts have held, however, that the general rule does not apply to shipments of livestock, and that the carrier may escape liability for damage thereto by showing the absence of negligence on its part. See Panhandle & S. F. Ry. Co. v. Wilson, Tex.Civ. App., 135 S.W.2d 1062 (wr. dis.).

No attack has been made on the jury findings in this case, and petitioner does not say that the damage to the melons was caused by one of the excepted perils mentioned above. It argues that carrier liability for damage to an interstate shipment of inanimate perishables is determined by the rule applicable to livestock, and that it has been exonerated by the jury's finding in response to Special Issue No. 3. Respondent insists and the Court of Civil Appeals held that the case is governed by the general common law rule. The judgment of the trial court was affirmed because petitioner did not bring itself within one of the recognized common law exceptions.

■ According to American Jurisprudence, no distinction is made in most jurisdictions "as respects the application of the common-law rule of liability for the safe transportation and delivery of inanimate property, on the basis of its nature or character as perishable or nonperishable. In some jurisdictions, however, it is held that the common-law rule of liability as an insurer does not apply in the case of perishable goods and that liability for the loss or injury thereof depends in all cases upon negligence." 9 Am.Jur. Carriers § 693, p. 841. See also Annotation, 115 A.L.R. 1274. Perhaps the leading authority supporting the latter view is Southern Pac. Co. v. Itule, 51 Ariz. 25, 74 P.2d 38, 115 A.L.R. 1268. The rule there laid down was recognized as sound in Texas & Pac. Ry. Co. v. Empacadora de Ciudad Juarez, Tex.Civ.App., 309 S.W.2d 926 (wr. ref. n. r. e.). The parties here agree, however, that the liability of a carrier for damage to an interstate shipment is a matter of Federal law to be determined by the Federal statutes and decisions.

The general common law rule of carrier liability has long been recognized and applied by the Federal courts. See Galveston Wharf Co. v. Galveston, H. & S. A. Ry. Co., 285 U.S. 127, 52 S.Ct. 342, 76 L.Ed. 659; Commodity Credit Corp. v. Norton, supra; Compania De Vapores Insco, S. A. v. Missouri Pacific R. Co., 5th Cir., 232 F. 2d 657; Lehigh Valley R. Co. v. State of Russia, 2nd Cir., 21 F.2d 396; Reider v. Thompson, 116 F.Supp. 279. In Schnell v. The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373, which was a suit in admiralty to recover for damage resulting from decay of a shipment of onions, the Supreme Court of the United States discussed the rule which requires the carrier to establish that the loss was due to some excepted peril, and said:

"The reason for the rule is apparent. He is a bailee entrusted with the shipper's goods, with respect to the care and safe delivery of which the law imposes upon him an extraordinary

duty. Discharge of the duty is peculiarly within his control. All the facts and circumstances upon which he may rely to relieve him of that duty are peculiarly within his knowledge and usually unknown to the shipper. In consequence, the law casts upon him the burden of the loss which he cannot explain or, explaining, bring within the exceptional case in which he is relieved from liability."

■ Petitioner directs our attention to the provisions of the Carmack Amendment that any common carrier shall be liable "for any loss, damage, or injury * * * caused by it or by any common carrier * * * to which such property may be delivered." 49 U.S.C.A. § 20(11). This statute does not alter or modify the basic common law rule of carrier liability with which we are here concerned. See Cincinnati, N. O. & T. P. R. Co. v. Rankin, 241 U.S. 319, 36 S.Ct. 555, 60 L.Ed. 1022; Secretary of Agriculture v. United States, 350 U.S. 162, 76 S.Ct. 244, 100 L.Ed. 173. Petitioner also relies on Rules 130 and 135 of the Perishable Protective Tariff No. 17, which are quoted in the margin,[1] and has cited a number of cases where the courts have said that these rules operate to limit the carrier's liability.

■ The reasoning of the courts in some cases is obscured by declarations that the carrier is or is not an insurer, and by statements indicating that the shipper, by establishing delivery to the carrier in good condition and receipt at destination in damaged condition, makes out a prima facie case of negligence on the part of the carrier. Where the common law rule is strictly enforced, the carrier is not an insurer with respect to damage caused solely by one of the excepted perils, but its responsibility is similar to that of an insurer in so far as other risks are concerned. And as pointed out in Chesapeake & O. Ry. Co. v. Thompson Mfg. Co., 270 U.S. 416, 46 S.Ct. 318, 70 L.Ed. 659, the so-called presumption of negligence is not a presumption at all but is a rule of substantive law under which the carrier is liable for failure to transport safely unless the loss or damage is due to one of the specified causes.

■ As we construe Rules 130 and 135, they simply provide that by furnishing protective services the carrier does not undertake to overcome the inherent tendency of perishable goods to deteriorate or decay, and will not be responsible, in the absence of negligence, for damage due to the fault of the shipper or the inherent nature of the goods themselves. The cases upon which petitioner relies do not hold otherwise. For example, specific acts of negligence were alleged by the plaintiff in Atlantic Coast Line R. Co. v. Georgia Packing Co., 5th Cir., 164 F.2d 1, and it was held that proof of compliance with the shipper's instructions constituted a defense to the allegations of negligence in the furnishing of protective services. In Delphi Frosted Foods Corp. v. Illinois Central R. Co., 6th

1. "*RULE 130*—CONDITION OF PERISHABLE GOODS NOT GUARANTEED BY CARRIERS.—Carriers furnishing protective service as provided herein do not undertake to overcome the inherent tendency of perishable goods to deteriorate or decay, but merely to retard such deterioration or decay insofar as may be accomplished by reasonable protective service, of the kind and extent requested by the shipper, performed without negligence."

"*RULE 135*—LIABILITY OF CARRIERS.—Property accepted for shipment under the terms and conditions of this tariff will be received and transported subject to such directions, only, and to such election by the shipper respecting the character and incidents of the protective service as are provided for herein. The duty of the carrier is to furnish without negligence reasonable protective service of the kind and extent so directed or elected by the shipper and carriers are not liable for any loss or damage that may occur because of the acts of the shipper or because the directions of the shipper were incomplete, inadequate or ill-conceived."

Cir., 188 F.2d 343, the shipper failed to establish that the fruit was in good condition when delivered to the carrier. While the Court of Appeals for the Fifth Circuit has observed that damage resulting from breakage of crates is different from spoilage due to inherent vice, it did not say that the carrier may exonerate itself without establishing that the case falls within the latter exception. See Yeckes-Eichenbaum, Inc. v. Texas Mexican Ry. Co., 5th Cir., 263 F.2d 791. In considering whether the shipper had shown negligence on the part of the carrier in Chesapeake & O. Ry. Co. v. Thompson Mfg. Co., supra, the court was concerned only with the right of the plaintiff to maintain suit without having given prior written notice of the claim. The applicable statute provided that such notice would not be required if the goods were damaged in transit by carelessness or negligence.

The concluding portion of the opinion in Trautmann Bros. v. Missouri Pac. R. Co., 5th Cir., 312 F.2d 102, seems to support petitioner's position, but the entire opinion must be read in the light of the trial court's findings. The shipper there prepared the car by using electric fans and thus melted ice which was required for refrigeration. The carrier was not notified of this action, with the result that the ice supply was not replenished, and many of the melons were found to be overripe and spoiled when they were unloaded at destination. Under these circumstances the trier of fact could well conclude, as he did, that the overripe condition of the melons was caused by excepted perils, i. e., the inherent nature of the perishables and the failure of the shipper to notify the carrier of the manner in which the car was prepared. Although the Court of Appeals referred to the Itule case in a footnote, its decision appears to be simply another application of the rule, as stated in the opinion, that "[s]o long as the carrier has discharged its duty of reasonable care, it is * * * not liable for damages occasioned solely by the inherent nature, or vice, of the goods themselves" or "for

damages caused solely by the acts or directions of the shipper."

The so-called livestock rule is based, at least in part, upon considerations which have no application in the case of inanimate perishables. We know that honeydew melons do not have the propensities of Brahma cattle, and are not likely to bite each other or kick the slats out of crates. Petitioner apparently recognizes that the rule it urges us to adopt would not be applicable where the carrier had failed to deliver a shipment of perishables, or in case of bruising, crate breakage or damage by fire. It seems to be saying that when the claim is for spoilage or decay, the carrier should have the benefit of a presumption that the damage was due solely to natural deterioration. We do not agree.

█ Neither the Congress nor the Federal courts have declared that the liability of a common carrier for damage to inanimate perishables may be predicated only upon negligence. The shipment in the present case was made under a Uniform Straight Bill of Lading which, unlike the Uniform Live Stock Contract prescribed by the Interstate Commerce Commission, states that the carrier shall be liable as at common law except as therein provided. The bill of lading then stipulates that the carrier shall not be liable for loss or damage caused by certain excepted perils, but there is no provision exempting it from liability for damage to perishables not caused by its own negligence. From a consideration of the terms of the bill of lading and the general common law rule as recognized and applied by the Federal courts, it seems clear to us that the Court of Civil Appeals properly refused to follow the Itule case. A common carrier is not responsible for spoilage or decay which is shown to be due entirely to the inherent nature of the goods, but petitioner has not established that the damage in this case was caused solely by natural deterioration.

The judgment of the Court of Civil Appeals is affirmed.