**STRICKLAND TRANSPORTATION COM-
PANY, Inc., Appellant,**

v.

**INTERNATIONAL AERIAL MAPPING
COMPANY, Inc., Appellee.**

No. 14640.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 24, 1968.

Sawtelle, Goode, Troilo, Davidson & Leighton, San Antonio, Muse, Currie & Kohen, Dallas, for appellant.

Wiley & Plumb, Jerry A. Gibson, San Antonio, for appellee.

BARROW, Chief Justice.

Appellee, hereinafter referred to as Shipper, brought this suit against appellant, hereinafter referred to as Carrier, under 49 U.S.C.A. § 20(11), to recover for damages sustained to an aerial mosaic shipped

from San Antonio, Texas, to New Orleans, Louisiana. The trial court rendered judgment for Shipper, after a non-jury trial, for the reasonable and necessary cost of repairs to the mosaic in the amount of $1,065.00, but denied its prayer for attorney's fees. Carrier has appealed.

■ The parties agree that a shipper of goods by common carrier makes a prima facie case of carrier liability by showing: (1) that the property was in good condition when delivered to the carrier at place of origin; (2) that the property was in a damaged condition when received by the consignee from the delivering carrier; and (3) the amount of the damages. Missouri Pac. R. Co. v. Elmore & Stahl, 368 S.W.2d 99 (Tex.Sup.1963), affirmed, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964). Here Carrier does not contend that the damage was caused solely by one of the excepted perils.[1]

This appeal relates primarily to the finding of the trial court that the mosaic was in a damaged condition when delivered to the consignee by the agents of Carrier. Carrier asserts that there is no evidence, or insufficient evidence, to support this finding and therefore Shipper failed to make out a prima facie case.

The shipment originated on June 29, 1964. This mosaic was an assemblance of about 150 aerial photographs mounted to give the appearance of one photograph of a large area and was six by eleven feet in size. The photographs were glued to sheets of masonite which were screwed to a wooden frame to prevent bending. For shipping, a wooden crate made of 1″ by 3″, or 1″ by 4″, pine lumber was built around the mosaic frame and enclosed the front and back of it.

The record does not conclusively establish the date of delivery of this mosaic by Carrier to the consignee, Industrial Photography, Inc., in New Orleans. Furthermore, there is very little evidence relating to this delivery. This is explained in part by the fact that the case was tried in San Antonio nearly three years after the delivery. The only direct evidence concerning the delivery was given by Jack Beech, owner of consignee, who testified by written interrogations. He testified that the mosaic was delivered on or about July 9, 1964. A sales engineer of Shipper went to New Orleans after receiving a call from consignee that the mosaic was damaged and this witness estimated that the mosaic must have been inspected about July 8. However, a business record of Carrier reflects that delivery was made to consignee on July 7, 1964.

Beech testified unequivocally that the mosaic was damaged when delivered to him. He said it was unpackaged on the day of delivery and the crate was broken, and the mosaic was cracked down through the middle; all the way through from the top to the bottom. Shipper's engineer testified that when he inspected the damage one of the braces on the back of the frame was broken and there were a couple of tears in the mosaic. The cost of repairs to this mosaic was $1,065.00.

There was no other direct evidence of the condition of the mosaic after delivery, but two of Carrier's business forms were introduced which relate to same. A form for "Inspection Report of Loss or Damage Discovered After Delivery" was introduced, which was signed by "James E. Wilson, Inspector." It recites that the mosaic was received by consignee on July 9, 1964. The nature of damage is described as follows: "Damage is two splits on face of mosaic— one support on back broken. Crate appears to be in good condition. Unable to determine how this damage could have occurred."

Carrier's appeal is based primarily upon its delivery receipt form. It describes the item shipped as "1 mosaic board," and in the lower right-hand corner of the form is

1. 368 S.W.2d 99, 101.

a provision: "Received in good order except as noted." No exceptions are shown on this form. There is no signature in the space provided below this provision, but across the body of the form is the signature, "Jack Beech." Carrier urges that this written receipt is prima facie evidence that the mosaic was received in good order and that in the absence of some explanation or contradiction of same, there is no evidence or insufficient evidence that the shipment was damaged when delivered to consignee by Carrier. See Alexander v. Meredith, 262 S.W. 111 (Tex.Civ.App.—Austin, 1924, writ ref'd); Jones on Evidence, 3rd Ed., § 492.

The signature of Beech is not identified on this form and no interrogatories were propounded to him relative to this delivery receipt. This point is hardly in issue as he testified the damage was not discovered at the time of delivery. He was asked: "Please state whether you, after discovering the damage to said aerial mosaic, refused to accept same." He answered: "No, we didn't, we had already accepted it before we discovered the damage."

■ The legal effect of a signed receipt of apparent good order was considered by this Court in Count II of Missouri Pacific Railroad Co. v. Elmore and Stahl, 360 S. W.2d 839 (Tex.Civ.App.—San Antonio 1962), affirmed, 368 S.W.2d 99 (Tex.Sup. 1963). It was there held that such recital relates only to the condition of the outside of the crates. See also Matthews-Carr v. Brown Express, 217 S.W.2d 75 (Tex.Civ. App.—El Paso, 1948, no writ); Gulf, C. & S. F. Ry. Co. v. Holder, 10 Tex.Civ.App. 223, 30 S.W. 383 (1895); Missouri Pacific Ry. Co. v. Fennell, 79 Tex. 448, 15 S.W. 693 (1891); Hoover Motor Express Co. v. United States, 262 F.2d 832 (Cir.Ct. 6th, 1959).

■ Here the mosaic frame was completely enclosed in a wooden crate and could not be seen until the outer crate was removed. Although Mr. Beech referred to the "crate" being broken, the record is not clear as to whether he had reference to the crate or wooden form on which the mosaic was mounted. On the other hand, the testimony of Shipper's engineer and the report filed by Carrier's inspector clearly show that the wooden frame of the mosaic was broken. This agent of Carrier said that the crate appeared to be in good condition. The damage to this mosaic and the frame on which it was mounted could not have been seen until the packing crate was removed. Therefore, the delivery receipt does not establish, as a matter of law, that the mosaic was in good condition when delivered to consignee. Furthermore, we cannot say from an examination of the entire record that the finding of the trial court that the mosaic was damaged when delivered to consignee is so against the great weight and preponderance of the evidence as to be manifestly unjust.

■ Carrier also complains of the failure of the trial court to make additional findings of fact that the shipment was delivered to consignee on July 7, 1964, and at that time there was no apparent damage. This request, made fifteen days after the original findings were filed, was not timely and the trial court did not err in refusing to make same. Rule 298, Texas Rules of Civil Procedure; Adams v. Houston Belt & Terminal Ry. Co., 405 S.W.2d 838 (Tex. Civ.App.—Houston 1966, no writ). In any event, same were not ultimate issues and reversible error is not shown by this refusal. Rule 434, T.R.C.P.; Plaza Co. v. White, 160 S.W.2d 312 (Tex.Civ.App.— San Antonio, 1942, writ ref'd).

The judgment is affirmed.