**R. H. HUTCHINSON, Appellant,**

v.

**TEXAS ALUMINUM COMPANY, Inc.,**
**Appellee.**

No. 15531.

Court of Civil Appeals of Texas.

Dallas.

Nov. 6, 1959.

Rehearing Denied Dec. 11, 1959.

Henry Klepak and Norman A. Zable, Dallas, for appellant.

J. Allen Blakeley and Ralph M. Hall, Dallas, for appellee.

DIXON, Chief Justice.

Appellee, Texas Aluminum Company, Inc., brought suit against appellant, R. H. Hutchinson, doing business as R. H. Hutchinson and Company, for $8,971.64, the balance alleged to be due for aluminum rods sold and delivered to appellant.

Hutchinson filed an answer and a cross-action in which he alleged that the merchandise delivered to him was defective, causing him a loss of $6,000 in labor costs and $5,400 in material costs—a total of $11,400. In a trial amendment appellant also pled total and partial failure of consideration; and alleged further that the aluminum delivered to him had no value except as scrap aluminum worth only $18,000 compared to the contract price of $47,400 to his damage in the sum of $29,400. In the alternative he prayed for the last named amount as his damages.

The case came on for trial before a jury. At the conclusion of the testimony appellee filed a motion for instructed verdict. The court withheld action on the motion for the time being. Meantime a charge was submitted to the jury asking three questions: (1) Was the aluminum shipped by appellee of a different dimension from that ordered by appellant? (2) Was the aluminum shipped by appellee defective in temper? And (3) what was the reasonable cash market value per pound of the aluminum in question in Dallas County in February 1957?

After deliberating for some time the jury sent word to the court that it was unable to agree on answers to the questions submitted. Thereupon appellee renewed its motion for instructed verdict. The motion was sustained. The court then withdrew the case from the jury and rendered judgment in favor of appellee in the main suit and against appellant on his cross-action.

Appellant's first point on appeal is that the trial court erred in taking the case from the jury when there were disputed fact issues raised by the evidence.

Before discussing the evidence we shall take notice of an argument made by appellant under this point. He says that

the court had no right to reconsider appellee's motion for instructed verdict, or to act on the motion after having submitted the case to a jury and having received notice that the jury was unable to agree.

■ There is no merit in appellant's argument. When a motion for instructed verdict is filed the court, if it sustains the motion, may withdraw the case from the jury and render judgment rather than instruct the jury to return a verdict. Clark v. Jones, Tex.Civ.App., 164 S.W.2d 62. And the Court may on reconsideration sustain a motion for instructed verdict even after the jury reports that it cannot agree. Thompson v. Twin City Lumber & Shingle Co., Tex.Civ.App., 220 S.W.2d 539, 541–542; Handy v. Olney Oil & Refining Co., Tex. Civ.App., 68 S.W.2d 313; Clement v. Producers' Refining Co., Tex.Civ.App., 270 S. W. 206; Citizens National Bank of Waco v. Abeel, Tex.Civ.App., 160 S.W. 609.

■ But what of appellant's assertion that there were fact issues raised by the evidence?

Appellant fabricates aluminum window screens, grills, guards, and doors. Appellee sells aluminum rods which are used by fabricators of articles such as appellant makes.

By two written purchase agreements appellant ordered 120,000 pounds of extruded aluminum known as type T–42 at 38 cents per pound. The dimensions of the pieces of aluminum were specified to be: .119 x .500 x 162 inches for 100,000 pounds, and 1/8 x 3/4 x 162 inches for 20,000 pounds. The T–42 type of material was found to be unsuitable, so the orders were changed by agreement of the parties to call for type T–5 at 39½ cents per pound. It is stipulated that these two changes were the only modifications made in the written orders.

The aluminum was not all delivered at one time. There were partial deliveries beginning January 22, 1957 and ending February 6, 1957. The first several deliveries were in small quantities in the nature of samples. Most of the material came on the last three deliveries. Each delivery was accompanied by an invoice which was paid immediately by appellant at the time of delivery except as to the last delivery. The invoice accompanying the last delivery, that of February 6, 1957, was in the amount of $8,971.64. Appellant received the merchandise, but declined to pay the invoice.

Appellant testified that he noticed defects in a few of the pieces of aluminum as early as February 1957 but did not discover the extent of the defects until he started using large quantities of the aluminum along toward the last of March 1957. Then he found that many of the pieces were too thick or too thin, or too heavy or too light with the result that they did not fit the machines with which he makes grills. Because of these variations in dimensions his machines would clog, so that it became necessary, at greatly increased cost, to resort to hand labor to do much of the work. Also, according to appellant, there were defects in the quality of the aluminum, some of it being porous and cross-grained, and some of it containing hard spots and some of it soft spots. To remedy these defects he had to purchase additional aluminum. Appellant's testimony also includes estimates of his increased labor costs, and increased material costs, as well as a statement that the aluminum delivered to him was worth only $18,000 as scrap material.

The testimony of appellant is sharply in conflict with that of witnesses who testified in behalf of appellee. But considering the testimony as a whole we are of the opinion that an issue was raised as to whether some of the material delivered to appellant was in fact defective in dimensions and in quality.

Appellee in its first counterpoint says that there were no disputed issues of fact and appellee was entitled to judgment as a matter of law, based on the uncontradicted and undisputed evidence before the court.

In support of its view appellee points to testimony of appellant himself. Appellant admitted that he used all of the aluminum rods in question in the fabrication of grills which he sold to customers without any reduction in price and without informing his customers that the grills contained defective material. His refusal to pay the last invoice, that of February 6, 1957, was not because of any alleged defects but because he was trying to have the price reduced from 39½ cents per pound to 38 cents per pound. He did not inform appellee of the alleged defects in the material until he filed his cross-action some time after appellee filed suit in March 1957. He first realized he had grounds for a cross-action when the defects were pointed out to him by a salesman for one of appellee's competitors.

In view of the above testimony appellee says that appellant is not entitled to rescind the contract and is estopped to claim damages.

Appellant's cross-action is not an action for rescission of the contract, so the cases cited by appellee in regard to rescission are not in point here.

■ Nor can we agree with appellee in regard to estoppel. Estoppel must be specially pled. Appellee did not plead estoppel. So estoppel could not furnish a basis for an instructed verdict. Rule 94, Texas Rules of Civil Procedure; Johnston v. Stephens, 121 Tex. 374, 49 S.W.2d 431; City Lincoln Mercury v. Ybarra, Tex.Civ.App., 308 S.W.2d 67; 17 Tex.Jur. 146.

■ Appellee further contends that the instructed verdict was proper because no evidence was offered as to the proper measure of damages. We think the proper measure of damages as a general rule in a case such as this one is the difference between the contract price and the cash market value of the goods delivered at the place and time of delivery; or if the contract calls for goods which are worth more than the contract price and the seller delivers defective merchandise the measure of damages is the difference in market value of the goods contracted for and the value of those received. 37–B Tex.Jur. 82–83, 90–91. We agree with appellee that no evidence was offered as to the correct measure of damages in this case.

■ But we do not agree with appellee that appellant's failure to offer such evidence was proper grounds for an instructed verdict. Where actionable injury is shown, or where a fact issue is raised as to actionable injury, a peremptory instruction is not authorized by a plaintiff's, or cross-plaintiff's failure to offer any evidence in support of the proper measure of damages. Collier v. Bankston-Hall Motors, Inc., Tex. Civ.App., 267 S.W.2d 898; Arnold v. Tarrant Beverage Co., Tex.Civ.App., 215 S.W. 2d 894; White v. Beaumont Implement Co., Tex.Civ.App., 21 S.W.2d 559; 41–B Tex. Jur. 239; Raymond v. Yarrington, 96 Tex. 443, 73 S.W. 800, 62 L.R.A. 962. The injured party is entitled at least to nominal damages.

We sustain appellant's first point.

In his second point appellant complains because the trial court refused to file findings of fact and conclusions of law after being asked to do so.

■ Appellant's second point is without merit for two reasons: (1) This was a jury trial and the court properly refused to file findings of fact and conclusions of law though the case was withdrawn from the jury on motion of appellee and judgment rendered by the court. Willis v. Snodgrass, Tex.Civ.App., 302 S.W.2d 706; Farr v. Kirby Lumber Corp., Tex.Civ.App., 203 S.W.2d 815; (2) Appellant did not comply with Rule 297, Vernon's Rules of Civil Procedure, by calling the court's attention to the court's omission to file findings and conclusions following a first request. Any complaint of the court's omission to file findings and conclusions is waived by failure to call the court's attention to such omission. Eng v. Wheeler,

Tex.Civ.App., 302 S.W.2d 263. We overrule appellant's second point.

Because the evidence raises a fact issue it was error for the court to take the case from the jury on appellee's motion and to render judgment. Therefore we must reverse the trial court's judgment and remand the cause for another trial.

Reversed and remanded.

## On Rehearing

Appellee in its motion for rehearing says that the law is well settled that the Court of Civil Appeals will not reverse a case merely to permit the award of nominal damages, though the party entitled to nominal damages would be entitled to them as a matter of law. Further, the right to nominal damages is one that must be invoked or it is waived. Mitchell v. Heard, Tex.Civ.App., 98 S.W.2d 832; Morin v. Houston Press Co., Tex.Civ.App., 103 S.W.2d 1087; Allbritton v. Mading's Drug Stores, Inc., Tex.Civ.App., 138 S.W. 2d 901; Matthews-Carr v. Brown Express, Tex.Civ.App., 217 S.W.2d 75; and Wafer v. Edwards, Tex.Civ.App., 248 S.W.2d 320.

We shall not take issue with the holdings in the above cases. But we do not consider such holdings controlling here, for here we are faced with a different situation. We are not reversing the court's judgment in this case merely to permit the award of nominal damages. Appellant in this case seeks actual damages in a large amount. Fact issues are presented. It is a jury case. The jury could not agree on the answer to any of the issues submitted. In our opinion the court should not have instructed a verdict against appellant after appellant had been permitted by the court to introduce evidence in support of an erroneous measure of damages.

Under the circumstances we think appellant ought to be given an opportunity to offer evidence, if he can, as to the proper measure of damages.

The motion for rehearing is overruled.